Peter A. Muhic (NJ ID NO. 041051994)
**LeVAN MUHIC STAPLETON LLC**
Four Greentree Centre
601 Route 73 N, Suite 303
Marlton, NJ 08053
Telephone:  (856) 259-3300

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY ENRIGHT, on behalf of herself and all others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>FCA US LLC and STELLANTIS N.V., )<br><br>Defendants. ) | No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Kimberly Enright ("Plaintiff"), on behalf of herself and all other similarly situated members of the below-defined class she seeks to represent (the "Class"), alleges against Defendants FCA US LLC ("FCA US") and Stellantis N.V. ("Stellantis") (collectively, "Defendants"), upon personal knowledge as to the factual allegations pertaining to herself and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I.    INTRODUCTION

1.    This case concerns Defendants' deceptive and unconscionable practice of misleading consumers into overpaying for their vehicles by inflating and misrepresenting the

nature of the charges customers must pay for the delivery of their vehicles (*i.e.*, the "destination fee") when purchasing or leasing a new vehicle at one of Defendants' authorized dealerships.

2.      A vehicle's "destination fee" is generally understood in the automotive industry to reflect the manufacturer's average cost of delivering one of its vehicles to a dealership. That destination fee is charged to the dealer and passed on to the purchaser or lessee of that vehicle. Consumers have the expectation that they are covering an automotive manufacturer's cost for the delivery of the manufacturer's vehicles when paying the "destination fee" as part of their new-vehicle lease or purchase.

3.      The same is true for the "destination fee" at issue here, which Defendants refer to as the vehicle's "Destination Charge."   Since at least 2015, Defendants have added the "Destination Charge" to the price of each new Chrysler-, Dodge-, RAM-, Jeep-, and FIAT-branded vehicle that has been offered for sale in the United States (the "Class Vehicles").   Unfortunately for consumers, the amount of Defendants' Destination Charge has increased sharply over the years and currently amounts to at least $1,495.00 per Class Vehicle.

4.      Defendants disclose the Destination Charge, along with other essential pricing information, on the window sticker of each Class Vehicle ("Monroney sticker"), and require their Dealers to pass on to consumers the specific amount of the Destination Charge.

5.      Consumers are not allowed to negotiate the amount of the Destination Charge paid as part of the Class Vehicle's overall price.  As a result, consumers who desire to purchase or lease one of Defendants' vehicles are forced to pay the exorbitant Destination Charge and do so based on the belief that it is a legitimate charge directly related to the cost of delivering the Class Vehicle.

6.      Despite the general understanding of the automotive industry and the reasonable expectations of consumers, however, Defendants include a significant amount of profit in their

Destination Charge and, in doing so, deceive customers into paying far more than the actual cost of vehicle delivery when purchasing or leasing one of the Class Vehicles.

7.      In fact, Defendants' Destination Charge has little correlation to the cost of delivering the Class Vehicles to their intended destination (*i.e.*, Defendants' dealerships); instead, the Destination Charge has become a huge profit center for Defendants.  Indeed, the Destination Charge allows Defendants to extract hidden markups on the sale of the Class Vehicles from unsuspecting consumers.

8.      As a direct and proximate result of Defendants' misrepresentation, deception, and/or concealment of the true nature of the Destination Charge and the fact that substantial profit is included in the Destination Charge, Plaintiff overpaid for her Class Vehicles.  Plaintiff leased a Class Vehicle that she would not otherwise have leased, or would have paid less for, had she known that Defendants' Destination Charge was not a legitimate charge related to the cost of delivery the Class Vehicle to her dealer at the point of sale.  Plaintiff has consequently suffered ascertainable losses and actual damages as a result of Defendants' unlawful conduct.

9.      Accordingly, Plaintiff, on behalf of herself and the below Class of similarly situated purchasers and lessees of the Class Vehicles, seeks damages and restitution to recover the inflated amounts paid to Defendants as part of their Destination Charge, as well as injunctive relief to prevent Defendants from continuing their wrongful conduct, as alleged herein.

## II.      JURISDICTION AND VENUE

10.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than Defendants.

11.     The Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of conducting business activities in the State of New Jersey.

12.     Venue is proper in this District, pursuant to 28 U.S.C. §1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated within this District, Defendants have marketed, advertised, sold, and leased the Class Vehicles in this District, and Defendants have caused harm to Plaintiff residing in this District.

## III.     PARTIES

### A.     Plaintiff

13.     Plaintiff Kimberly Enright ("Plaintiff") is a citizen of New Jersey, residing in Winfield Park, New Jersey.  Plaintiff leased a new 2019 Jeep Grand Cherokee (the "Class Vehicle") on June 5, 2019, at Seaview Chrysler Dodge Jeep Ram, one of Defendants' authorized dealers located in Ocean Township, New Jersey.

14.     Prior to leasing the Class Vehicle, Plaintiff viewed the Class Vehicle's Monroney sticker, including the $1,495.00 amount represented by Defendants as the "Destination Charge" for the Class Vehicle.

15.     Plaintiff reasonably believed that the $1,495.00 Destination Charge represented Defendants' cost to deliver the Class Vehicle to Seaview Chrysler Dodge Jeep Ram, and further understood that the Destination Charge was a pass-through cost that she was required to pay and unable to negotiate as part of the Class Vehicle's overall price.

16.     Defendants failed to disclose that they had included substantial profit in the Destination Fee, and Plaintiff, therefore, leased her Class Vehicle on the reasonable, but mistaken, belief that profit was not included in the Destination Charge.

17.    Plaintiff reasonably relied to her detriment on Defendants' representation regarding their $1,495.00 Destination Charge and their deception and/or omissions regarding the true nature of the Destination Charge.

18.    Plaintiff has been damaged by Defendants' deceptive conduct and material representations and/or omissions regarding the Destination Charge for her Class Vehicle.  Plaintiff overpaid for her vehicle by paying the full $1,495.00 amount of the Destination Charge when leasing her Class Vehicle.

**B.    Defendants**

19.    FCA is a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan.  FCA's sole member is FCA North America Holdings LLC, a Delaware limited liability company with its principal place of business in South Lyon, Michigan.  FCA designs, engineers, manufactures and sells vehicles under the Chrysler, Jeep, Dodge, RAM, and Fiat brands.  FCA was the North American arm of Fiat Chrysler Automobiles N.V., until its merger with Peugeot S.A., when it became a wholly-owned subsidiary of Stellantis.

20.    Stellantis is a multinational auto manufacturer, which was formed as a result of the merger of Fiat Chrysler Automobiles N.V. and Peugeot S.A. in 2020.  Stellantis is a publicly traded corporation organized and existing under the laws of, and with its principal place of business in, the Netherlands.  As a result of the merger, Stellantis has become the fourth largest automaker by volume and third by revenue in the world.

**IV.    FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

21.    Consumers, such as Plaintiff, have the reasonable expectation that they are covering Defendants' cost for the delivery of the subject vehicle when paying the Destination Charge as part of their Class Vehicle lease or purchase.

5

22.     Defendants do not include the Destination Charge in the manufacturer's suggested retail price ("MSRP")—the price at which Defendants and their dealers advertise the Class Vehicles for sale to the public.  Instead, the Destination Charge is often mentioned in the same phrase as taxes, license and registration, creating an impression that Defendants had no control over the setting of its amount.  As with those other fees, the Destination Charge—the amount one must pay for the delivery of the Class Vehicles—is tacked onto the MSRP when a customer purchases or leases a new vehicle at Defendants' authorized dealership.

23.     The Federal Automobile Information Disclosure Act ("AIDA") requires manufacturers to disclose on the Monroney sticker "the amount charged, *if any*, to [the] dealer for the transportation of [the] automobile to the location at which it is delivered[.]"  The AIDA does not, however, require manufacturers to charge destination fees at all, but only to reveal those fees when they are assessed.

24.     In fact, automakers do not include transportation costs from overseas assembly plants in their destination fees; those costs are wrapped into their vehicles' MSRPs. There is no prohibition on automobile manufacturers wrapping the cost of transportation within the U.S. into their vehicles' MSRPs as well.  But consumers notice increases with MSRPs, which is why Defendants have taken advantage of consumers' reasonable expectations regarding the nature and composition of destination fees in order to increase Defendants' revenue in a way that largely goes undetected.

25.     Indeed, Defendants deceive and mislead consumers regarding the costs of shipping their vehicles by adding a deceptively-named "Destination Charge" to each of their automobile sales.

26.      By labeling the fee a "Destination Charge," Defendants lead reasonable consumers to believe the "charge" reflects the cost for delivering the vehicle to its "destination." By virtue of the name of the fee itself, Defendants mislead reasonable consumers into believing the "Destination Charge" reflects the actual cost of shipping vehicles to their "destination," not the cost of shipping the vehicles *plus* substantial profit.

27.      Defendants' price stickers break out the Destination Charge separate and apart from the base MSRP and includes it as an add-on. With this chicanery, the vehicle itself appears less expensive, and Defendants' artificial "Destination Charge" can be used as a vessel for profit that would otherwise appear in the cost of the vehicle.

28.      But despite its name, the Destination Charge has little to do with getting the vehicle to its intended destination, and the name of the fee is itself a misrepresentation to shoppers.

29.      Simple math shows this is true. While fuel and shipping costs have remained fairly constant over the last decade, the increase in Defendants' Destination Charges during that same period has been astronomical. A recent study by Consumer Reports revealed that Destination Charges rose an average of 90 percent on Chrysler-, Dodge-, and Jeep-branded vehicles since 2012. Destination Charges also rose 74 percent on RAM trucks since 2011, and 114 percent on Fiat-branded vehicles since 2012. The charges on the Jeep Cherokee, specifically, rose to $1,495 in 2019, up from $995 in 2016—a fifty percent increase in just three years.

30.      In sum, the increase in Defendants' Destination Charges over the past decade has not and is not correlated with the actual increase in costs of shipping. That is why other automakers' "destination fees" have not increased at the same pace during this same ten-year period. Audi, BMW, Infiniti, Lexus, Lincoln, Mercedes-Benz and Volvo each grew their fees by less than 20 percent over the past decade.

31.     Defendants use their informational advantage—they know exactly what it costs to ship vehicles to their "destination"—to exploit consumers, knowing full well that consumers have no way of verifying or calculating what it costs Defendants to transport their vehicles.

32.     Defendants require that the specific amount of the "Destination Charge" be passed through to consumers, who are not allowed to negotiate the amount as part of the Class Vehicle's overall price. This allows Defendants to collect the full inflated amount of the Destination Charge from Class members, while ensuring that their dealerships are fully reimbursed for these excessive charges imposed by Defendants.

33.     It was reasonable for Plaintiff to understand that separate line item called "Destination Charge" bore a reasonable relation to the shipping costs for the vehicle. Indeed, that is the very reason for a specially designated line-item charge. While consumers understand a lump sum price can include anything—including profit—the same is not true for line items. Line items are intended to inform consumers of the reason they are being charged. For that reason, consumers reasonably do not expect line-item costs to include hidden profit.

34.     Federal law also supports this reasonable expectation. Indeed, the AIDA was enacted in an effort to remedy the deceptive practice of pre-ticketing vehicles at fictitious and excessive prices. In addition, the requirement that automakers disclose any "amount charged . . . [the] dealer for the transportation of [the] automobile" to the dealership was specifically to prevent dealers from deceptively artificially increasing delivery or transportation fees charged to consumers when making a new vehicle purchase or lease. Using the disclosure requirement as a vehicle for the automaker to artificially increase its destination fee with profit is contrary to the AIDA's purpose.

35.    The practice of inflating a vehicle's destination fee with profit also is contrary to the general understanding of the automotive industry that destination fees are comprised of the costs to deliver a vehicle from its plant—or port of entry, for imports—to the dealer that sells it.

36.    In fact, destination fees used to vary around the country, depending on how far the vehicle was being shipped.  Because this gave dealers near the assembly plant an unfair advantage, automakers adopted a national average for shipping costs.  As vehicles get larger, the cost to ship them will be more, and as incident costs related to shipping increase, so too should the destination fee.  It is well-understood in the automotive industry, however, that the delivery of an automaker's vehicles to its dealers is supposed to be a profit-neutral venture. For Defendants, the Destination Charge is a profit-making machine.

37.    Reasonable consumers believe that the dealer pays the actual costs of delivery, and not a charge that has no reasonable correlation to the costs of transporting the vehicle to the dealership.

38.    It is precisely because of this reasonable consumer understanding that other major industry participants disclose whether their "destination fees" include a profit component, rather than being limited to the actual cost of shipping.  Indeed, Toyota, for example, labels its destination fee as a "Delivery, Processing and Handling Fee" and explains on its website that "Toyota may make a profit on the Delivery, Processing and Handling Fee."  Defendants make no such disclosure.

39.    Instead, Defendants omit critical information concerning the Destination Charge. Defendants never disclose that the Destination Charge far exceeds the actual costs it pays to transport their vehicles to dealers.  Further, Defendants do not disclose the methodology (if there is one) in calculating the Destination Charge.  In truth, Defendants devised and set the amount of

the Destination Charge without any intent to actually recover the true costs of shipping their vehicles.

40.     Defendants' Destination Charge practices are not only deceptive and likely to mislead consumers acting reasonably under the circumstances—as evidenced by Plaintiff's experience described herein—but they are unconscionable and undertaken in bad faith, with the sole objective to maximize profits at the expense of the consuming public.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Fraudulent Concealment Tolling

41.     Defendants have known that profit is included in their Destination Charge since at least 2015, and have concealed from, or failed to, notify Plaintiff and Class members of the full and complete nature of the Destination Fees.  Defendants continue to conceal the fact that profit is included in their Destination Charge to this day.

42.     Any applicable statue of limitations has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### B.     Estoppel

43.     Defendants were, and are, under a continuous duty to disclose to Plaintiff and Class members the true nature of their Destination Charge.  Defendants actively concealed—and continue to conceal—the true nature of their Destination Charge and knowingly made misrepresentations about the nature of the Destination Charge.  Plaintiff and Class members reasonably relied upon Defendants' knowing affirmative representatives, omissions and/or active concealment of these facts.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

**C.      Discovery Rule**

44.      The causes of action alleged herein did not accrue until Plaintiff and Class members discovered that their Class Vehicles' Destination Charge contained profit.

45.      Plaintiff and Class members had no realistic ability to discern that the Class Vehicles' Destination Charge included profit because of Defendants' active concealment of that fact.

46.      Thus, Plaintiff and Class members were not reasonably able to discover the fact that Defendants' Destination Charge included profit until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that fact.

## VI.      CLASS ALLEGATIONS

47.      Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

48.      The proposed Class is defined as:

> All consumers who, during the applicable statute of limitations,
> purchased or leased a Class Vehicle in the state of New Jersey and
> paid a Destination Charge.

49.      Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

50.      Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

51.     The members of the Class are so numerous that joinder is impractical.  The Class

consists of thousands of members, the identity of whom is within the knowledge of and can be

ascertained only by resort to Defendants' records.

52.     The claims of the representative Plaintiff are typical of the claims of the Class she

seeks to represent in that the representative Plaintiff, like all Class members, was charged improper

and deceptive fees as alleged herein.  The representative Plaintiff, like all Class members, has been

damaged by Defendants' misconduct in that she was assessed deceptive Destination Charges.

Furthermore, the factual basis of Defendants' misconduct is common to all Class members, and

represents a common thread of deceptive and unconscionable conduct resulting in injury to all

members of the Class.

53.     There are numerous questions of law and fact common to the Class and those

common questions predominate over any questions affecting only individual Class members.

54.     Among the questions of law and fact common to the Class are whether Defendants:

a.     Engaged in deceptive conduct and/or misrepresented the cost of
transporting the Class Vehicles to their dealerships;

b.     Violated the consumer protection act through their misrepresentations
and/or omissions regarding the Destination Charge;

c.     The proper method or methods by which to measure damages, and

d.     The declaratory and injunctive relief to which the Class is entitled.

55.     Plaintiff's claims are typical of the claims of other Class members, in that they arise

out of the same wrongful conduct.  Plaintiff has suffered the harm alleged and has no interests

antagonistic to the interests of any other Class member.

56.     Plaintiff is committed to the vigorous prosecution of this action and has retained

competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.

58.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

59.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

60.     Defendants have acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

61.     All conditions precedent to bringing this action have been satisfied and/or waived.

## VII.   CAUSES OF ACTION

### COUNT I

### Violation of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1

62.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

63.     Defendants, Plaintiff, and the New Jersey Class members are "persons" within the meaning of N.J. STAT. ANN. §56:8-1(d).

64.     Defendants are engaged in "sales" of "merchandise" within the meaning of §56:8-1(c) and (e).

65.     The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."  N.J. STAT. ANN. §56:8-2.

66.     In the course of their business, Defendants engaged in deceptive and unconscionable practices in violation of the New Jersey CFA by:

      a.     Making material misrepresentations regarding the true nature of the Destination Charge;

      b.     Causing confusion or misunderstanding regarding the nature of the Destination Charge;

14

       c.      Omitting, suppressing, and concealing the material fact that the Destination

Charge was inflated with profit; and

       d.      Exploiting its informational advantage over consumers to unconscionably

and unfairly inflate the Destination Charge with profit.

67.     Defendants' scheme and concealment of the true nature of the Class Vehicles were material to Plaintiff and the New Jersey Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the New Jersey Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiff and the New Jersey Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

68.     Plaintiffs and the New Jersey Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Given the general understanding in the automobile industry that an automaker's destination fee reflects its cost to deliver a vehicle to one of its dealerships and consumers' reasonable expectations that they are covering that cost when paying a destination fee, the inflation of the Destination Charge with profit by Defendants is deceptive and unconscionable.

69.     Defendants had an ongoing duty to Plaintiff and the New Jersey Class members to refrain from deceptive and unconscionable practices under the New Jersey CFA in the course of their business. Specifically, Defendants owed Plaintiff and the New Jersey Class members a duty to disclose the profit in the Destination Charge because they possessed exclusive knowledge of and intentionally concealed such material fact from Plaintiff and the New Jersey Class members, and they made representations regarding the Destination Charge that were rendered misleading in

the absence of the material facts they withheld.

70.    Notwithstanding that duty, Defendants abused its unequal bargaining power and systematically engaged in the above described deceptive and unconscionable acts and practices to the detriment of Plaintiff and members of the New Jersey Class.

71.    As evidenced by the above, Defendants took actions with regard to the Delivery that materially departed from standards of good faith, honest in fact and fair dealing in the public marketplace in an intentional effort to obtain an unfair bargain by forcing Class members to pay inflated amounts unrelated to Defendants' cost to deliver the Class Vehicles to their dealerships.

72.    Defendants utilized deceptive and unconscionable business practices in inflating the Destination Charge in order to artificially increase the overall acquisition cost of the Class Vehicles without any legitimate basis or reason, and without providing Plaintiff and Class members with any additional benefit for the amount they paid over Defendants' cost for delivering their Vehicles to the dealerships where their Vehicle purchases and leases were made.  Defendants' practices are disruptive of public policy, at odds with the public interest, and deleterious to the common good.

73.    As a direct and proximate result of Defendants' deceptive, misleading, and unlawful acts and practices, Plaintiff and members of the New Jersey Class paid an inflated Destination Charge—which they were not permitted to negotiate—and consequently, paid an artificially inflated price for their Class Vehicles. Accordingly, Plaintiff and members of the New Jersey Class have suffered ascertainable loss and actual damages.

74.    Pursuant to N.J. STAT. ANN. §56:8-19, Plaintiff and the New Jersey Class members seek an order awarding damages, treble damages, injunctive relief, attorney's fees and costs and any other just and proper relief available under the New Jersey CFA.

## COUNT II

### Unjust Enrichment

75.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

76.     To the detriment of Plaintiff and the Class, Defendants have been, and continue to be, unjustly enriched as a result of their wrongful conduct alleged herein.

77.     Plaintiff and the Class conferred a benefit on Defendants when they paid Defendants' Destination Charges that they were misled into believing were the actual costs of shipping the vehicle from the manufacturer to the dealership, without the inclusion of profit.

78.     Defendants unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

79.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

80.     Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendants as a result of their inequitable conduct as more fully stated herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

a)     Declaring Defendants' Destination Charge policies and practices described herein to be misleading and wrongful;

b)     Restitution to Plaintiff and the Class in an amount to be determined at trial;

c)     Disgorgement of the ill-gotten gains derived by Defendants from their misconduct;

d)     Actual damages in an amount according to proof;

e)     Punitive and exemplary damages;

17

f)       Pre-judgment interest at the maximum rate permitted by applicable law;

g)       Treble damages, statutory damages, and attorneys' fees as provided by law;

h)       Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

i)       Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.


Dated: October 27, 2021.                     Respectfully submitted,

                                             **LeVAN MUHIC STAPLETON LLC**


                                             By */s/ Peter A. Muhic*
                                                 Peter A. Muhic (NJ ID NO. 041051994)
                                                 Four Greentree Centre
                                                 601 Route 73 N, Suite 303
                                                 Marlton, NJ 08053
                                                 Telephone:  (856) 259-3300
                                                 E-mail:  pmuhic@levanmuhic.com

                                                 Jason H. Alperstein
                                                 Jeff Ostrow
                                                 Jonathan Streisfeld
                                                 **KOPELOWITZ OSTROW**
                                                 **FERGUSON**
                                                 **WEISELBERG GILBERT**
                                                 1 W. Las Olas Blvd., Suite 500
                                                 Fort Lauderdale, Florida 33301
                                                 Telephone:  (954) 525-4100
                                                 Facsimile:  (954) 525-4300
                                                 E-mail:  alperstein@kolawyers.com
                                                          ostrow@kolawyers.com
                                                          streisfeld@kolawyers.com

                                                 (*Pending pro hac vice admission*)

Jeffrey D. Kaliel
Sophia Gold
**KALIEL GOLD PLLC**
1100 15th St. NW, 4th Floor
Washington, D.C. 20005
Telephone:  (202) 350-4783
Facsimile:  (202) 871-8180
E-mail:  jkaliel@kalielpllc.com
            sgold@kalielgold.com

(*Pending pro hac vice admission*)