1          UNITED STATES DISTRICT COURT
2          DISTRICT OF NEW JERSEY

3  _____
   KIMBERLY ENRIGHT, et al, on
4  behalf of herself and all
   others similarly situated,
5                 PLAINTIFFS

6      Vs.                          CIVIL NO.
                                    21-19364 (GC)
7  FCA US, LLC, et al,
                 DEFENDANTS
8  _____

9
                         **MARCH 27, 2023**
10                       CLARKSON S. FISHER COURTHOUSE
                         402 EAST STATE STREET
11                       TRENTON, NEW JERSEY  08608

12

13  B E F O R E:      THE HONORABLE GEORGETTE CASTNER
                      U.S. DISTRICT COURT JUDGE
14                    DISTRICT OF NEW JERSEY

15
    A P P E A R A N C E S:  (BY TELEPHONE)
16
        LITE, DePALMA, GREENBERG & AFANADOR, LLC
17      BY:  BRUCE GREENBERG, ESQUIRE
        FOR THE PLAINTIFFS
18
        GIBBS LAW GROUP, LLP
19      BY:  ROSEMARY RIVAS, ESQUIRE
        FOR THE PLAINTIFFS
20

21

22  **COURT'S OPINION ON PLAINTIFFS' MOTION TO APPOINT INTERIM LEAD**
    **COUNSEL (ECF NO. 29)**
23

24
            FRANCIS J. GABLE, C.C.R., C.R.R.
25              OFFICIAL U.S. REPORTER
                  (856) 889-4761

1    THE COURT:  This matter comes before the Court upon
2    the filing of Plaintiffs motion to appoint interim counsel
3    (ECF No. 29).
4         On June 21, 2022, the Court consolidated two related
5    class actions (*Enright v. FCA US, LLC and Lindsey v. FCA US,*
6    *LLC*), both of which allege that Defendants FCA US, LLC and
7    Stellantis N.V. imposed deceptively inflated surcharges when
8    selling new cars.  (ECF No. 25).  The Court allowed Plaintiffs
9    time to meet and confer about a leadership structure to
10   represent the proposed class.  (ECF No. 25.)
11        Plaintiffs jointly moved on July 22, 2022 pursuant
12   to Fed. R. Civ. P. 23(g) ("Rule") for the Court to appoint
13   Gibbs Law Group LLP ("Gibbs"), Handley Farah & Anderson PLLC
14   ("HFA"), and Kaliel Gold PLLC ("Kaliel Gold")--as Interim
15   Co-Lead Counsel for the proposed class, and Lite DePalma
16   Greenberg & Afanador, LLC ("Lite DePalma"), as Interim Liaison
17   Counsel.  (Br. In Supp., ECF No. 29.)
18        Defendants responded on August 1, 2022 and opposed
19   the appointment of three interim lead counsel and one interim
20   liaison counsel. (Br. In Opp'n, ECF No. 31.) However,
21   Defendants do not oppose the appointment of single interim
22   lead counsel and a single interim liaison counsel.  (Br. In
23   Opp'n 2.)
24        The Court held a hearing on the Motion to Appoint
25   Interim Lead Counsel and Interim Liaison Counsel (ECF No. 29)

1  on March 15, 2023.  After consideration of the Parties'

2  submission and the arguments made during the March 15th

3  hearing, the Court will appoint Gibbs and HFA as interim

4  co-lead counsel and Lite DePalma as interim liaison counsel.

5  For sake of expediency, the Court will not read citations and

6  footnotes onto the record.  Those will be included in the

7  transcript should counsel choose to order the transcript.

8        The Court will briefly summarize its findings on

9  this call and an Order will follow.

10        The appointment of class counsel is governed by

11  Federal Rule of Civil Procedure (hereinafter "Rule") 23(g).

12  Federal Rule of Civil Procedure 23(g)(3) provides that the

13  Court "may designate interim counsel to act on behalf of a

14  putative class before determining whether to certify the

15  action as a class action."  *Yaeger v. Subaru of Am., Inc.*,

16  Civ. No. 14-4490, 2014 WL 7883689, at *1 (D.N.J. Oct. 8, 2014)

17  (citing Fed. R. Civ. P. 23(G)(3)).  "It appears to be

18  generally accepted that the considerations set out in Rule

19  23(g)(1)(C), which govern the appointment of class counsel

20  once a class is certified, apply equally to the designation of

21  interim class counsel before certification."  *Durso v. Samsung*

22  *Elecs. Am., Inc.,* Civ. No. 2:12-5352, 2013 WL 4084640, at *2

23  (D.N.J. Aug. 7, 2013).

24        Under Rule 23(g), the Court must consider the

25  following: (i) the work counsel has done in identifying or

1   investigating potential claims in the action; (ii) counsel's

2   experience in handling class actions, other complex

3   litigation, and the types of claims asserted in the action;

4   (iii) counsel's knowledge of the applicable law; and (iv) the

5   resources that counsel will commit to representing the class.

6   Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  "The Court also has the

7   discretion to appoint more than one firm to act as co-lead

8   counsel." *In re Insulin Pricing Litig.,* No. 3:17-0699, 2017 WL

9   4122437, at *1 (D.N.J. Sept. 18, 2017).  "If more than one

10   adequate applicant seeks appointment, the court must appoint

11   the applicant best able to represent the interests of the

12   class."  *In re: Am. Honda Motor Co., Inc.*, Civ. No. 2:15-2661,

13   2015 WL 12723036, at *1 (S.D. Ohio Dec. 18, 2015) (citing Fed.

14   R. Civ. P. 23(g)(2))

15        Additionally, the Court "may consider any other

16   matter pertinent to counsel's ability to fairly and adequately

17   represent the interests of the class."  Fed. R. Civ. P. 23

18   (g)(1)(B).

19        The Court notes that "a multi-firm structure may, at

20   times, promote effective representation of the purported

21   class's interest."  *In re Remicade Antitrust Litig.*, No.

22   17-CV-4326, 2018 WL 514501, at *2 (E.D. Pa. Jan. 23, 2018).

23   However, "approval of several lead counsel may precipitate

24   friction and a lack of coordination among counsel." *In re

25   Milestone Sci. Sec. Litig.*, 187 F.R.D. 165, 178 (D.N.J. 1999).

1    In making its decision, the Court will first turn to
2  the Rule 23(g)(1)(A) factors:
3    First, counsel asserts that they have diligently worked
4  to identify and investigate any potential claims by
5  researching Consumer Reports of destination charges in recent
6  years, the legislative history of the Automobile Information
7  Disclosure Act of 1958, and behavior economics regarding
8  pricing practices, inflation markers, and historic
9  transportation costs.  (Br. In Supp. 12.)  However, counsel
10 does not specifically identify which of the four firms (or if
11 all of the four firms) did this work.
12    Due to their research, counsel indicate that they are
13 prepared to file a detailed consolidated complaint that will
14 contain: Details about the automotive industry's history with
15 artificially inflating the stated cost of transporting new
16 vehicles to dealerships, coined "phantom freight";  discussion
17 of the legislative history and hearings that led Congress to
18 pass the Automobile Information Disclosure Act, which curbed
19 phantom freight in the 1950s; an explanation of how companies
20 like Chrysler (now FCA) once charged phantom freight, but due
21 to Congressional pressure, abandoned the practice; analysis of
22 the market forces and behavioral economics behind pricing
23 tactics like those challenged here, and how they affect
24 consumer perceptions and spending patterns; and information
25 about how Defendants' destination fee surcharges have risen at

1   rates far faster than actual transport costs or inflation.

2   (Br. In Supp. 13.)

3        Also, counsel notes that they have interviewed dozens

4   of potential class members, which will allow them to file a

5   comprehensive complaint with multiple named plaintiffs.

6   Again, however, it is not clear which of the four firms

7   conducted the interview or whether it was all of them.

8        The Court notes that all four firms have significant

9   experience in handling complex class action litigation.

10  Specifically, both Gibbs and HFA have significant experience

11  trying automobile related class-actions.  *See, e.g., In re*

12  *American Honda Motor Co., Inc., CR-V Vibration Marketing and*

13  *Sales Practices Litig., Civ. No. 15- 2661* (S.D. Ohio) (Gibbs);

14  *Glenn v. Hyundai Motor Company Civ. No. 15-02052* (C.D. Cal.)

15  (Gibbs); *Porsche Gasoline Litigation*, Civ. No. 15-2672 (N.D.

16  Cal.)(Gibbs); *True v. American Honda Motor Co.*, Civ. No.

17  07-0287 (C.D. Cal.) (HFA); *Precht v. Kia Motors America*, Civ.

18  No. 14-01148 (C.D. Cal.) (HFA); *Davitt v. American Honda*

19  *Motor, Co.*, Civ. No. 13-00381 (D.N.J.) (HFA); *Hadley v. Subaru*

20  *of America, Inc.*, Civ. No. 15-07210 (D.N.J.) (HFA); *Lyman v.*

21  *Ford Motor Company*, Civ. No. 21-10024 (E.D. Mi.) (HFA).

22       However, while all four firms have experience with

23  class actions, it appears that Kaliel Gold's class action

24  experience cited in Plaintiffs' brief largely arises from the

25  financial services industry.  *See, e.g., Hinton v. Atlantic*

1  *Union Bank*, Civ. No. 20-00651 (E.D. Va.); *Kelly v. Community*

2  *Bank*, Civ. No. 18-00919 (N.D.N.Y.); *Gonzalez v. Banner Bank*,

3  Civ. No. 20-05151 (E.D. Wa.); *Lambert v Navy Federal Credit*

4  *Union*, Civ. No. 19-00103 (E.D. Va.); *White v. Members 1st*

5  *Credit Union*, Civ. No. 19-00556 (M.D. Pa.) *Morris, et al. v.*

6  *Bank of America*, N.A., Civ. No. 18-00157 (W.D.N.C.)

7          Given Gibbs' and HFA's experience specifically

8  involving automobile class actions and the fact that these two

9  firms are currently litigating similar cases against FCA in

10  California and Delaware, the Court finds Gibbs and HFA have

11  more experience handling the types of claims asserted in this

12  action and are likely to have greater knowledge of the

13  applicable law over Kaliel Gold.  *See Waudby v. Verizon*

14  *Wireless Servs., LLC*, 248 F.R.D. 173, 177 (D.N.J. 2008)

15  (noting attorney experience in an area of law supports the

16  idea that they will be able to devote more resources to a

17  specific litigation).

18          Based on Plaintiffs' submission, the Court does find

19  that all four firms make a proper showing that they can devote

20  the proper time and resources to the proposed class and does

21  not base its holding on this factor.

22          While all four firms have significant experience in

23  class actions, Gibbs' and HFA's substantial experience

24  prosecuting automobile class actions in particular, the Court

25  finds that the Rule 23(g)(1)(A) factors weigh in favor of

1  Gibbs and HFA as being better able to represent the class as

2  interim co-lead counsel over Kaliel Gold. *See Galicki v. New*

3  *Jersey*, Civ. No. 14-169, 2014 WL 4979499, at *2 (D.N.J. Oct.

4  6, 2014) (finding that three out of the four Rule 23(g)

5  factors support either group of proposed lead counsel, however

6  the Court chose the lead counsel based on their greater

7  experience in the specific area class action work).

8       Additionally, as noted above the Court "may consider

9  any other matter pertinent to counsel's ability to fairly and

10  adequately represent the interests of the class."  Fed. R.

11  Civ. P. 23 (g)(1)(B).

12       Specifically, this District has occasionally turned

13  to the Manual for Complex Litigation for guidance when

14  appointing interim counsel in the past. *See Yaeger v. Subaru*

15  *of Am., Inc.*, Civ. No. 14-4490, 2014 WL 7883689, at *2 (D.N.J.

16  Oct. 8, 2014) (using the Manual for Complex Litigation as

17  guidance).

18       The Manual provides that in addition to the Rule

19  23(g) factors, a court may consider involvement in parallel

20  cases in other courts; any existing attorney-client

21  relationship with a named party; and a fee and expense

22  arrangements that may accompany the proposed appointment.

23  Manual for Complex Litigation, Fourth § 21.272.

24       The Court is aware that both Gibbs and HFA represent

25  consumers in California and Delaware in similar litigation

1   against FCA.  *See Gunn v. FCA US, LLC, Civ.* No. 22-02229 (N.D.

2   Cal.); *Beeney v. FCA US, LLC*, Civ. No. 22-00518 (D. Del.)

3   Given the similarities of this case to the parallel cases in

4   California and Delaware, that the cases will likely require

5   similar motion practice and discovery, and that Gibbs and HFA

6   likely maintain synergies due to their history working

7   together, the Court finds that Gibbs and HFA as interim

8   co-lead counsel along with Lite DePalma as interim liaison

9   counsel are best able to represent the interests of the

10  proposed class.

11         While Plaintiffs agree on the appointment of three

12  firms as interim co-lead counsel, the Court finds at this time

13  that having three firms serve as interim co-lead counsel may

14  result in greater costs, decreased efficiency, and difficulty

15  managing the litigation.  *See In re Remicade Antitrust Litig.*,

16  2018 WL 514501, at *2.  This case currently only has three

17  named Plaintiffs across two consolidated cases with two

18  defendants.  As a result, the Court finds that the size and

19  scope of the current case does not warrant three interim

20  co-lead counsel firms.  *See, e.g., In re Oxford Health Plans,*

21  *Inc. Sec. Litig.*, 182 F.R.D. 42, 43 (S.D.N.Y. 1998)

22  (appointing three co-lead counsel in a case involving 52

23  separate actions)

24         The Court also notes that "[t]he first-filed case

25  may be a relevant factor when the factors for class counsel do

1   not tilt heavily in either direction and there is a need for

2   an objective tie-breaker." *Lowery v. Spotify USA Inc.*, Civ No.

3   15-09929, 2016 WL 6818756, at *3 n.2 (C.D. Cal. May 23, 2016).

4   But "it would be an abuse of discretion to appoint an attorney

5   as class counsel solely because he may have won the race to

6   the courthouse." *Id.*  "When there is not a need for an

7   objective tie-breaker, courts often appoint class counsel from

8   a case that was not first filed." *Cadena v. Am. Honda Motor*

9   *Co.*, Civ. No. 20-511, 2020 WL 3107798, at *5 (C.D. Cal. June

10  9, 2020) (citation omitted) (internal quotations omitted).

11  While Kaliel Gold was counsel on the first-filed case in this

12  matter, for the reasons stated above, the Court does not

13  believe that a tiebreaker is needed based on considerations of

14  the factors under Rule 23(g).

15          Additionally, Plaintiffs point to *In re*

16  *Mercedes-Benz Tele Aid Contract Litigation* for why the Court

17  should adopt their proposed legal structure.  In *In re*

18  *Mercedes-Benz Tele Aid Contract Litig*, the Court appointed

19  three firms to serve as co-lead counsel (including Gibbs) and

20  one firm to serve as interim counsel. Civ. No. 07-2720, 2011

21  WL 4020862, at *8 (D.N.J. Sept. 9, 2011) (recognizing that the

22  case "involved years of difficult and hard-fought litigation

23  by able counsel on both sides" and that "there was no

24  assurance the Plaintiffs would prevail or that Class counsel

25  would receive any fees.  The Settlement was a favorable

1  one."). However, *In re Mercedes-Benz Tele Aid Contract*

2  *Litigation* was a multidistrict litigation and appeared to have

3  been much larger in scope than this case. As a result, the

4  Court does not find the legal structure from *In re*

5  *Mercedes-Benz Tele Aid Contract Litigation* to be persuasive

6  for purposes of this motion.

7       Based on the reasons set forth above, the Court

8  grants in part and denies in part Plaintiffs' Motion. The

9  Court hereby appoints Gibbs and HFA as interim co-lead counsel

10  and Lite DePalma as interim liaison counsel.

11       Should this litigation significantly increase in

12  scope, or upon any other showing of good cause, this Court is

13  willing to reconsider this ruling.

14       All counsel are instructed to avoid unnecessary

15  duplication of efforts and to control fees and costs. Given

16  that the Court has oversight power in the award of attorney

17  fees resulting from a class action, the Court is confident

18  that all counsel will bill appropriately and efficiently. *See*

19  *In re Diet Drugs*, 582 F.3d 524, 537 (3d Cir. 2009) (noting

20  that awards for attorneys' fees in a class action are always

21  subject to court approval).

22       An appropriate Order will be entered consistent with

23  the Court's findings set forth on the record today.

24

25

1    "I certify that the foregoing is a correct transcript from the

2    record of proceedings in the above-entitled matter."

3

4    /S/ Francis J. Gable, C.C.R., C.R.R.    March 27, 2023

5

6    _____        _____

7    Signature of Court Reporter                  Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25