<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BCR CARPENTRY LLC, KIMBERLY ENRIGHT, WILLIAM DEMOLA, MICHAEL BENT, and AMY ARROYO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 21-19364 (GC) (JTQ)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

This matter comes before the Court upon Defendant FCA US LLC's Motion to Dismiss the Consolidated Second Amended Class Action Complaint (SAC), (ECF No. 69), pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). Plaintiffs opposed and Defendant replied. (ECF Nos. 69-5 & 69-10.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's Motion is **GRANTED.**

**I.   BACKGROUND**

This putative class action involves allegations that FCA US, LLC (FCA), has unlawfully charged New Jersey consumers, through dealerships, a "destination charge" that includes profit when FCA distributes new model-year 2018 or later vehicles for lease or sale in the United States.

### A.   Procedural Background[1]

The procedural history is set forth in more detail in this Court's December 22, 2023 Memorandum Opinion accompanying its Order dismissing Plaintiffs' First Amended Complaint (FAC). *See BCR Carpentry LLC v. FCA US, LLC*, Civ. No. 21-19364, 2023 WL 11867230, at *1-3 (D.N.J. Dec. 22, 2023). On January 22, 2024, following this Court's dismissal Order, (ECF No. 63), Plaintiffs moved for leave to amend their Complaint (ECF No. 65). Two days later, the Court granted Plaintiffs' request. (ECF No. 66.) Plaintiffs thereafter filed the SAC, pleading the same three counts as in the FAC. FCA then moved to dismiss the SAC. (ECF No. 69.) On July 19, 2024, FCA filed a Notice of Supplemental Authority related to a decision in a substantially similar case in which the court denied the plaintiffs leave to amend their complaint.[2] (ECF No. 72.) Plaintiffs did not respond.

### B.   Factual Background[3]

The Court presumes the reader's familiarity with the underlying facts, which were set forth in this Court's previous Memorandum Opinion. *See BCR Carpentry LLC*, 2023 WL 11867230, at *2-3. The Court addresses only the essential facts and the new factual allegations in the SAC.

---

[1]   The Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

[2]   This Court may properly consider FCA's Notice of Supplemental Authority, which notified the Court of a relevant decision entered after briefing on this Motion was completed. *See Atkins v. Capri Training Ctr., Inc.*, Civ. No. 13-06820, 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014) ("[I]f pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority; however, a Notice of Supplemental Authority should not advance new arguments[.]" (citing *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255 (3d Cir.2008)).

[3]   The factual background is taken from the Consolidated Second Amended Class Action Complaint. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

FCA markets and distributes vehicles under the Chrysler, Jeep, Dodge, Ram, Fiat, and Maserati brands. (*Id.* ¶ 46.) Plaintiffs and the putative class members are purchasers and leasers of new, model-year 2018 and later Chrysler, Jeep, Dodge, Ram, Fiat, and Maserati-brand vehicles. (*Id.* ¶ 1.)

Pursuant to the Automobile Information Disclosure Act of 1958 (AIDA), 15 U.S.C. § 1231, *et seq.*, car manufacturers must place a label—commonly known as a "Monroney Sticker"—on the window of each new vehicle before making it available for sale. (ECF No. 67 ¶¶ 135, 142.) The label must list, among other things, the "destination charge." (*Id.* ¶ 150.) According to the AIDA, the destination charge should be "the amount charged, if any, [by the manufacturer] to [a] dealer for the transportation of [an] automobile to the location at which it is delivered to [a] dealer." (*Id.* ¶ 142 (quoting 15 U.S.C. § 1232(f)(3)).) Plaintiffs allege that when manufacturers inflate the amount they charge for the delivery of a vehicle, by including some amount of profit on top of their real costs, this charge is passed on from dealerships directly to consumers. (*Id.* ¶¶ 125, 146.)

Plaintiffs each bought vehicles manufactured by FCA and each paid a destination fee ranging from $1,495 to $1,895. (*Id.* ¶¶ 12-13, 18-19, 24-25, 30-31, 36-37, 41-42.) Plaintiffs allege that the destination charge they agreed to pay for each of their vehicles was materially higher than the actual delivery cost from the manufacturer to the dealership and that they were never informed that the charges were marked up to generate a profit. (*Id.* ¶¶ 13, 14, 19, 21, 25, 27, 31, 33, 37, 39, 42, 44.)

The SAC contains several new allegations aimed at establishing that reasonable consumers do not view destination charges as a means of generating a profit by auto manufacturers. For example, the SAC cites an article quoting an auto industry expert who claims that destination charges are "intentionally [] profit neutral." (*Id.* ¶ 112.) Plaintiffs also cite articles that inform

3

consumers that "destination fees . . . aren't a money-making line item" but are instead meant to "pass-along cost." (*Id.* ¶ 115.) Plaintiffs reference the Kelley Blue Book for the proposition that "[d]estination fees are not negotiable. No amount of bargaining makes them go away." (*Id.* ¶ 67.) Plaintiffs also reference a statement made by a Chrysler spokesperson—FCA's corporate predecessor—in 2013 that destination fees are "based on our costs to deliver a new vehicle from the assembly plant to the dealership." (*Id.* ¶ 113.)

Plaintiffs allege that the FCA's markup is hundreds of dollars more than other vehicle manufacturers. (*Id.* ¶ 99.) Plaintiffs assert that FCA has increased its destination charges beyond increases in freight costs and inflation. (*Id.* ¶ 100.) FCA's practices in marking-up destination charges prevents consumers from price shopping because destination charges are rarely mentioned in advertisements, which instead focus on a vehicle's Manufacturer's Suggested Retail Price (MSRP). (*Id.* 59-63.) According to the behavioral economists cited by Plaintiffs, this type of profit allocation is a well-known method of manipulating consumers. (*Id.* ¶¶ 72-89.) Taken together, Plaintiffs assert that FCA's practice of including profit in its destination charges allows FCA to sell vehicles with artificially low MSRPs, thus thwarting Congress's goal of ensuring fair competition. (*Id.* 54-57, 70-71.)

## II.     LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

For claims of fraud, plaintiffs "must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Burns v. Stratos*, 2023 WL 4014474, at *2 n.3 (3d Cir. June 15, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This ordinarily requires "[a] plaintiff alleging fraud . . . [to] support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). "Rule 9(b)'s 'normally rigorous particularity rule has been relaxed somewhat where the factual information is particularly within the defendant's knowledge or control.' But even if a relaxed application of Rule 9(b) were warranted . . . , [a plaintiff] would still need to allege facts demonstrating that his [or her] fraud claims are plausible." *Tripati v. Wexford Health Sources Inc.*, 2022 WL 17690156, at *2 n.3 (3d Cir. Dec. 15, 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).

### III. DECISIONS FROM SUBSTANTIALLY SIMILAR CASES

As addressed in this Court's prior Memorandum Opinion setting forth the deficiencies in the FAC, *BCR Carpentry LLC*, 2023 WL 11867230, at *4-6, several district courts have dismissed

similar complaints that allege destination fees that include a profit are deceptive, fraudulent, or otherwise improper. *See Romoff v. General Motors LLC*, 574 F. Supp. 3d 782, 784 (S.D. Cal. 2021)*; Gunn v. FCA US, LLC*, Civ. No. 22-02229, 2023 WL 5418736, at *1 (N.D. Cal. Aug. 22, 2023). *Beeney v. FCA US LLC*, Civ. No. 22-00518, 2023 WL 6962116, at *5 (D. Del. Oct. 20, 2023). In *Romoff*, the United States Court of Appeals for the Ninth Circuit affirmed the district court's dismissal with prejudice, concluding that there were insufficient allegations of deception. *See Romoff v. Gen. Motors LLC*, No. 22-55170, 2023 WL 1097258, at *1 (9th Cir. Jan. 30, 2023).

Plaintiffs contend that their new factual allegations—aimed at establishing that reasonable consumers view destination charges as non-negotiable pass-through fees and that FCA undermines competition by profiting from destination fees—cure the deficiencies that led this Court and others to dismiss similar complaints. (*See generally* ECF No. 69-5.) In support of their argument, Plaintiffs claim that "no court has dismissed a complaint containing detailed allegations like those now present here." (*Id.* at 10.) However, after the parties fully briefed this Motion, the United States District Court for the District of Delaware denied the plaintiffs in that case leave to amend their complaint to add the same type of allegations that Plaintiffs allege here in the SAC. *See Beeney v. FCA US LLC*, Civ. No. 22-00518, 2024 WL 3444488, at *1 (D. Del. July 17, 2024). There, the court held that, even in light of Third Circuit precedent requiring courts to freely grant plaintiffs leave to amend their complaints, the amendments would be futile because the plaintiffs "continue to fail to show that customers are not told what the destination charge is and that the dealer is actually charged less than the listed destination charge." *Id.* The court rejected the plaintiffs' contention that adding allegations regarding how reasonable consumers view destination charges would enable their complaint to survive a motion to dismiss:

> Plaintiffs cite several third-party articles or other statements, none made by Defendant, that customers have been told that

> destination charges do not include profits. . . . But none of these third-party articles or statements show that Defendant itself has made deceptive statements or not accurately listed the destination charge it charges to the dealers.
>
> [*Id.* (internal citations omitted).]

Finally, the Court found that even if the plaintiffs could prove some deception, they were unable to point to any injury, because they were "fully informed of the destination charge and the manufacturer's suggested retail price and, as is common in the industry, [were] free to negotiate a final price regardless of the listed MSRP and destination charge." *Id.*

## IV. DISCUSSION

Plaintiffs bring three state law claims—money had and received (Count One); violations of the New Jersey Consumer Fraud Act (NJCFA) (Count Two); and unjust enrichment (Count Three). The Court will first examine Plaintiffs' claims under the NJCFA and then proceed with the common-law claims. The Court ultimately finds that Plaintiffs still have not plausibly pled their three counts, and their claims will be dismissed.[4]

### A. Count Two (New Jersey Consumer Fraud Act)

In *Cox v. Sears Roebuck & Co.*, the New Jersey Supreme Court supplied a broad overview of the NJCFA's early history:

> In 1960, the Legislature passed the Consumer Fraud Act "to permit the Attorney General to combat the increasingly widespread practice of defrauding the consumer." The Act conferred on the Attorney General the power to investigate consumer-fraud complaints and promulgate rules and regulations that have the force of law. In 1971, the Legislature amended the Act to "give New Jersey one of the strongest consumer protection laws in the nation." The Legislature expanded the definition of "unlawful practice" to include "unconscionable commercial practices" and broadened the

---

[4] Though Plaintiffs' allegations that FCA has engaged in deceptive practices and omitted material facts may sound in fraud and be subject to Rule 9(b)'s heightened pleading standards, the Court does not reach this argument, because the claims fail under Rule 8's plausibility standard.

> Attorney General's enforcement powers. That amendment also provided for private causes of action, with an award of treble damages, attorneys' fees, and costs. Governor Cahill believed that those provisions would provide "easier access to the courts for the consumer, [would] increase the attractiveness of consumer actions to attorneys and [would] also help reduce the burdens on the Division of Consumer Affairs."
>
> [647 A.2d 454, 460 (N.J. 1994) (internal quotations and citations omitted).]

The NJCFA's subsequent history has been marked by the "constant expansion of consumer protection," *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 364 (N.J. 1997), and the New Jersey Supreme Court has stated that "[t]he language of the [NJ]CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud," *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997) (citing *Barry v. Arrow Pontiac, Inc.*, 494 A.2d 804, 811 (N.J. 1985)). Moreover, "like most remedial legislation, the Act should be construed liberally in favor of consumers." *Cox*, 647 A.2d at 461 (citing *Barry*, 494 A.2d at 811). This is because "[t]he legislative concern was the victimized consumer, not the occasionally victimized seller." *Channel Companies, Inc. v. Britton*, 400 A.2d 1221, 1221 (N.J. Super. Ct. App. Div. 1979) (citing *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978)).

The principal purpose of the NJCFA's private cause of action is to create "an efficient mechanism to: (1) compensate the victim for his or her actual loss; (2) punish the wrongdoer through the award of treble damages; and (3) attract competent counsel to counteract the 'community scourge' of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual." *Weinberg v. Sprint Corp.*, 801 A.2d 281, 290 (N.J. 2002) (quoting *Lettenmaier v. Lube Connection, Inc.*, 741 A.2d 591, 593 (N.J. 1999)). Under N.J. Stat. Ann. § 56:8-19, a private claim brought by a consumer requires proof of "three elements: '1)

8

unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 960 (N.J. 2014) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)).

"[T]he [NJ]CFA sets forth three general categories of unlawful acts: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 790 (N.J. 2005) (citing *Cox*, 647 A.2d at 462). The "practices" deemed "unlawful" under the NJCFA's primary operative provision are stated in broad terms and include "unconscionable" or "decept[ive]" commercial practices or the "omission of any material fact" occurring in connection with a "sale" or "advertisement" of "merchandise" or real estate by any "person." N.J. Stat. Ann. § 56:8-2. The "common thread" underlying all types of unlawful conduct is the "capacity to mislead." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 288 (D.N.J. 2009). Although a showing of intent is not essential if the claimed NJCFA violation is an affirmative act or a regulatory violation—as the regulations impose strict liability for such violations—such a showing is necessary if the claimed violation is an omission. *See Bosland*, 964 A.2d at 748-49. Here, Plaintiffs allege that FCA's destination charges violate the NJCFA by a combination of affirmative acts—unconscionable and deceptive commercial practices—as well as by omitting material facts. (ECF No. 49 ¶¶ 117-119.) The Court will examine each alleged basis in turn.

### 1. *Affirmative Acts*

Plaintiffs first argue that because "FCA's mark-up would surprise consumers," it constitutes a deceptive practice under the NJCFA. (ECF No. 69-5 at 20.) For there to be liability under the

9

NJCFA,[5] a defendant's affirmative acts must be "misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Harnish v. Widener Univ. Sch. of L.*, 931 F. Supp. 2d 641, 648 (D.N.J. 2013) (quoting *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003)). Though the determination of what stands "outside the norm" will often present a question for a jury, "courts have dismissed NJCFA complaints for failure to state a claim 'where plaintiffs have failed to allege that the defendant engaged [in] conduct that could be considered misleading within the meaning of the Act.'" *Id.* (quoting *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 515 (D.N.J. 2009)).

In dismissing the FAC, this Court noted that Plaintiffs did "not allege that FCA concealed or hid the destination charge or that the charge [was] for a service that was not or could not be performed." *BCR Carpentry LLC*, 2023 WL 11867230, at *9. Moreover, the Court observed that the "amount listed and charged by the dealerships is not alleged to be different than what FCA in fact charged the dealerships for the delivery of each vehicle." *Id.* The same is true now. (*See, e.g.*, ECF No. 67 ¶ 66 ("FCA presents the destination charge to car buyers and lessees on the window stickers that FCA prints and attaches to each new vehicle for sale or lease at FCA dealerships.").) Plaintiffs instead focus their attention on a different issue identified by the Court— that reasonable consumers would not understand a destination charge to be free of profit. Plaintiffs argue that the SAC includes "considerable new detail concerning consumer expectations." (ECF No. 69-5 at 37.) But even accepting these factual allegations as true, dismissal is warranted.

Plaintiffs do not allege any false statements made by FCA, but instead argue that FCA's conduct in marking up destination fees is misleading. When it dismissed the FAC, this Court

---

[5] "In a diversity case [a federal] court must interpret substantive state law in accordance with rulings of the state's highest court." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012).

agreed with other courts that held, as a matter of law, that the term "charge" did not imply an absence of profit. *BCR Carpentry LLC*, 2023 WL 11867230, at *10 (citing *Gunn*, 2023 WL 5418736, at *5 and *Beeney*, 2023 WL 6962116, at *5). As this Court explained:

> Plaintiffs cite no authority supporting the inference that an average consumer would interpret a seller's "charge" as simply equaling the "cost" to the seller. "Charge" is not a specialized term that requires sophistication or expert knowledge. Consumers every day undoubtedly pay a host of charges and fees with the understanding that sellers price goods and services to make a profit.
>
> [*Id.*]

This Court thus concluded that FCA's conduct did not qualify as "deception" under the NJCFA. Accordingly, the Court's prior dismissal was in line with those of other courts rejecting Plaintiffs' theory of deception. *See Id.* at *10 (citing *Romoff*, 2023 WL 1097258, at *1; *Gunn*, 2023 WL 5418736, at *5; and *Beeney*, 2023 WL 6962116, at *5).

In response to the Court's dismissal of the FAC, Plaintiffs supplemented their allegations with evidence from third-party consumer sources which suggest that reasonable consumers believe destination charges do not include a profit. According to Plaintiffs, "[v]irtually every consumer-facing outlet repeats the same message: destination charges represent 'straight pass-along costs.'" (ECF No. 69-5 at 20.) These third-party statements do not alter this Court's prior conclusion that the term "charge" does not imply an absence of profit. *BCR Carpentry LLC*, 2023 WL 11867230, at *10; *see also Beeney*, 2024 WL 3444488, at *1. Indeed, these are not statements made by FCA, nor do these articles demonstrate that these "charges" or "costs" are definitively profit neutral based on the understanding of a reasonable consumer. *See Beeney*, 2024 WL 3444488, at *1.

Plaintiffs also cite to a 2013 article quoting a Chrysler spokesperson as stating that destination charges are "based on our costs to deliver a new vehicle from the assembly plant to the

11

dealership." (ECF No. 69-5; ECF No. 67 ¶ 113[6].) Yet Plaintiffs do not explain what factors are considered in determining these costs and whether a profit is also included.

This Court previously held that "Plaintiffs' repeated emphasis on the statements of individual members of Congress more than 60 years ago during the debate over the AIDA is not a persuasive ground upon which to infer deception." *BCR Carpentry LLC*, 2023 WL 11867230, at *1. Nevertheless, Plaintiffs now emphasize that the SAC "add[ed] detail about how members of Congress agree that delivery charge mark-ups mislead," while referencing lawmakers' statements about the AIDA from the 1950s. (ECF No. 69-5 at 21-22.) For the reasons already expressed, the Court finds these statements unpersuasive in proving that FCA engaged in deception. *See BCR Carpentry LLC*, 2023 WL 11867230, at *11.

Ultimately, Plaintiffs' claims related to FCA's alleged deception fail once again because Plaintiffs have still not tied their deception claim to any conduct or statement by FCA. *See id.* at *10 ("There is also no allegation that FCA took affirmative steps, other than listing the 'Destination Charge' on the Monroney Sticker, to mislead Plaintiffs into believing that the charge was equal to FCA's delivery costs—and not a penny more."). Plaintiffs' references to third-party sources regarding destination fees is insufficient to survive a motion to dismiss. *See Beeney*, 2024 WL 3444488, at *1 (after previously dismissing plaintiffs' complaint, holding that any amendment to add third-party sources would be futile).

Plaintiffs next argue that FCA's mark-up on the destination fee is unconscionable because "FCA uses its mark-up to undermine price competition." (ECF No. 69-5 at 23.) Plaintiffs take issue specifically with the amount of the destination charge, not the mere existence of it. (*See id.*)

---

[6]   (citing Kelsey Mays, *What Makes Up a Destination Charge?*, Cars.com (Sept. 23, 2013), https://www.cars.com/articles/what-makes-up-a-destinationcharge- 1420663050695/).

Under New Jersey law, "[t]here is no precise formulation for an 'unconscionable' act that satisfies the statutory standard for an unlawful practice. The statute establishes 'a broad business ethic' applied 'to balance the interests of the consumer public and those of the sellers.'" *Shah v. Amazon Home Warranty Serv.*, 2023 WL 176096, at *3 (N.J. Super. Ct. App. Div. Jan. 13, 2023) (quoting *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013)). "An unconscionable practice under the [NJ]CFA 'necessarily entails a lack of good faith, fair dealing, and honesty," *id.*, and it "need not allege an affirmative fraudulent statement, representation, or omission by the defendant," *Katz v. Ambit Ne., LLC*, Civ. No. 20-01289, 2021 WL 2680184, at *7 (D.N.J. June 29, 2021) (citation omitted). As to an alleged deceptive practice, "[i]n order . . . to amount to a NJCFA violation for an affirmative act of deception . . ., plaintiffs must show that defendant's statements on its product are false" or misleading. *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 703 (D.N.J. 2011).

This Court previously found that Plaintiffs had not stated a plausible claim that FCA's destination fees were unconscionable. In so finding, the Court noted that "[e]ven accepting that FCA's destination charges are somewhat higher than the charges of its competitors, nothing indicates that Plaintiffs were thwarted from comparison shopping before agreeing to pay FCA's disclosed fee." *BCR Carpentry LLC*, 2023 WL 11867230, at *10. Other courts considering the issue have come to similar conclusions. *See, e.g.*, *Romoff*, 574 F. Supp. 3d at 788 ("Reasonable or average consumers would not be surprised to learn that the price of goods often includes profit for the seller."); *Gunn*, 2023 WL 5418736, at *4 ("In essence, plaintiffs ask the Court to determine how much of a profit is fair or reasonable for FCA to make on the different components of its car sales. As amorphous as any balancing test warranted by ... [consumer fraud law] might be, it does not authorize such broad and limitless judicial intervention into private business affairs and

transactions."); *Beeney*, 2023 WL 6962116, at *5 ("[N]o reasonable consumer would believe that the destination charges ... included no manufacturer profit.").

After amending their Complaint, Plaintiffs now argue they have "added significant detail to support the conclusion that FCA's mark-up is unconscionable. (ECF No. 69-5 at 24.) Specifically, it "includes facts explaining how FCA's mark-up subverts price competition in the automotive industry, while FCA collects far more than its costs justify." (*Id.*) Plaintiffs further allege that "FCA's charge is the highest in the entire automotive industry—hundreds of dollars higher than the next closest automaker." (*Id.*) According to Plaintiffs, FCA's destination charges are "substantially higher" than the cost of delivery, and FCA is able to charge that higher destination charge because "[c]omparison-shopping in the auto industry centers around MSRPs," which are advertised separately from destination charges. (*Id.* at 25.)

Relatedly, Plaintiffs allege that consumers cannot simply shop elsewhere because "some other automakers are now marking up their charges." (*Id.* at 26.) Thus, "consumers cannot easily avoid being overcharged by simply choosing to shop elsewhere." (*Id.*) Plaintiffs also allege that destination charges are non-negotiable, meaning that "consumers are taught that it is a waste of time to ask for a discount." (*Id.* at 27.) Plaintiffs thus argue that "there is ample basis to conclude that FCA acts unconscionably by shifting hundreds of dollars in profit from the MSRP into automakers' delivery charges." (*Id.*)

After evaluating the additional factual allegations surrounding FCA's alleged price manipulation, and accepting them as true, the Court sees no reason to depart from its earlier ruling that Plaintiffs have not sufficiently alleged that FCA's mark-up on the destination charges was unconscionable under the NJCFA. In dismissing Plaintiffs' claims related to unconscionability, this Court relied on the Third Circuit's decision in *Ciser v. Nestle Waters North America Inc.*, 596

14

F. App'x 157, 157-58 (3d Cir. 2015). *See BCR Carpentry LLC*, 2023 WL 11867230, at *9. There, the Third Circuit found that a fully disclosed fee in a consumer contract was not unconscionable under the NJCFA. *Ciser*, 596 F. App'x at 158. This Court thus concluded that "like in *Ciser*, it cannot be inferred as inherently unfair or unconscionable for FCA to include a measure of profit in the destination charges that it passes to consumers who, before purchasing or leasing their new vehicles, know the full amount of the charges." *BCR Carpentry LLC*, 2023 WL 11867230, at *10. Plaintiffs have not alleged any new facts that would change this Court's prior ruling and analysis of *Ciser*. (*See generally* ECF No. 69-5.)

Instead, Plaintiffs cite *Pro v. Hertz Equip. Rental Corp.*, Civ. No. 06-03830, 2012 WL 12906183, at *1 (D.N.J. June 25, 2012), to support their argument that "there is ample basis to conclude that FCA acts unconscionably by shifting hundreds of dollars in profit from the MSRP into automakers' delivery charges." (ECF No. 69-5 at 27.) In *Hertz*, the court explained that:

> an unconscionable commercial practice will be found where "the price [charged for the product or service] is grossly excessive in relation to the seller's costs," and where "the goods sold have little or no value to the consumer for the purpose for which [the consumer] was persuaded to buy them and which the seller pretended they would serve.
>
> [*Hertz*, 2012 WL 12906183, at *1 (alterations in original).]

*Hertz* involved a class action claim in which the plaintiffs alleged that insurance sold by a car rental company was actually illusory. *Id.* In denying the defendant's partial motion for summary judgment, the court referenced the fact that discovery had revealed that out of 1.4 million car rentals, there were only 274 instances in which the customer had been relieved of liability. *Id.* Thus, while the defendant had collected $151 million in insurance charges, it had only paid approximately $1.3 million in claims. *Id.* at *2. Here, Plaintiffs do not contend that the destination charge was illusory or that the charge was for a service that was not provided. Unlike in *Hertz*,

15

the charges at issue include the cost to deliver the vehicle and are not of "little or no value to the consumer." *See id.* at *1 (quoting *Kugler v. Romain*, 279 A.2d 640, 644 (N.J. 1971)). Importantly, none of the Plaintiffs allege that the destination fee was illusory—that FCA does not incur costs to ship its vehicles or that Plaintiffs did not receive their vehicle. Plaintiffs simply allege that FCA's destination fee includes an additional profit. (*See generally* ECF No. 67.) For many of the same reasons already addressed by this Court, Plaintiffs' claims alleging unconscionable practices by FCA will be dismissed.

### 2. *Omissions*

To establish an unlawful act of omission under the NJCFA, a "plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment." *Harnish,* 931 F. Supp. 2d at 652 (quoting *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2003)). "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what [was] concealed to induce the purchase." *Arcand*, 673 F. Supp. 2d at 297.

The Court previously found that Plaintiffs did not state a NJCFA claim based on the omission theory for two reasons. First, the Court found that Plaintiffs had not plausibly alleged that FCA was under a duty to disclose that the destination charge included profits. *BCR Carpentry LLC*, 2023 WL 11867230, at *11. Second, the Court found that Plaintiffs' allegations did not establish that any alleged omissions were material. *Id.* Plaintiffs' omission-based claim in the SAC ultimately fails for the same reasons.

Plaintiffs argue they have cured the deficiencies in their Complaint related to the first point because their "new allegations solidify that consumers understand 'destination charges' to be profit-free." (ECF No. 69-5 at 32.) That, however, does not address the Court's reasons for finding that FCA was not under a duty to disclose. This Court previously explained that "the AIDA

16

requires manufacturers of new cars to disclose 'the amount charged, if any, to [a] dealer for the transportation of such automobile to the location at which it is delivered to such dealer.'" *BCR Carpentry LLC*, 2023 WL 11867230, at *11. Accordingly, this Court found that FCA undisputedly complied with AIDA, and it further noted that Congress could have required more fulsome disclosure, but it chose not to do so. *Id.* Plaintiffs' SAC does not change the Court's prior conclusion that "Plaintiffs d[id] not point to any allegations that support the inference that FCA ever referred to its 'destination charge' as being equal to the 'underlying delivery costs.'" *Id.*

The Court also finds that Plaintiffs have still not alleged that the amount of profit FCA made from the destination charge was a "material fact" in purchasing their vehicles. The third-party statements cited by Plaintiffs do not alter the Court's conclusion that the amount of profit in a fully disclosed destination fee is immaterial. *Id.*; *see also Beeney*, 2023 WL 6962116, at *6 ("Plaintiffs have not alleged facts showing that the listed destination charge was material to their purchasing decisions, let alone that they would not have purchased or leased their vehicles had FCA disclosed that there was profit baked into the destination charge."). For these reasons, Plaintiffs have not stated a plausible claim against FCA for liability under the NJCFA based on any alleged omissions.[7]

### B. Counts One and Three (Money Had and Received & Unjust Enrichment)

The elements of a money had and received claim "are essentially the same as those for unjust enrichment." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 381 (D.N.J. 2021). "Both are quasi-contract claims, and the federal courts have construed them in parallel." *Id.* (collecting cases); *see also New York Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co.*,

---

[7]  Having concluded that Plaintiffs do not state a claim for violations of the NJCFA, the Court does not reach the question of whether Plaintiffs' NJCFA claims are preempted by the AIDA. (ECF No. 69-1 at 32-29.)

Civ. No. 10-148, 2012 WL 209349, at *2 (D.N.J. Jan. 24, 2012) ("One cause of action for unjust enrichment at common law was the action in assumpsit for 'money had and received,' which is 'equitable in spirit, although legal in form, and is maintainable when the defendant has received money which in equity and good conscience belongs to the plaintiff.'" (quoting *Hartford Acc. & Indem. Co. v. Benevento*, 44 A.2d 97, 100 (N.J. E. & A. 1945))).  These quasi-contractual claims "appl[y] when a party 'received a benefit and retention of that benefit without payment would be unjust.'" *Dougherty*, 534 F. Supp 3d at 379 (citing *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016)).  These claims typically arise "when a plaintiff cannot show that an express or implied contract existed, but still seeks to recover on principles of equity." *Id.*

For many of the same reasons the Court dismisses Plaintiffs' NJCFA claims, the Court will dismiss Plaintiffs' money had and received and unjust enrichment claims. There is no alleged inequity. Rather, the destination charge is disclosed to the buyer as set forth on the Monroney Sticker. (*See* ECF No. 67 ¶¶ 135, 142.) Plaintiffs cite several cases in which courts in this district have permitted unjust enrichment claims to proceed against manufacturers where the plaintiffs purchased vehicles from car dealerships. (ECF No. 69-5 at 41.) But, unlike here, those cases involved specific allegations of wrongdoing or failure to perform. *See Bullard v. Jaguar Land Rover Auto. PLC*, Civ. No. 20-14464, 2023 WL 4845873, at *12 (D.N.J. July 28, 2023) (finding that plaintiff stated unjust enrichment claim against car manufacturer that knew of manufacturing defect but failed to disclose it); *Rains v. Jaguar Land Rover N. Am., LLC*, Civ. No. 4370, 2023 WL 6234411, at *11 (D.N.J. Sept. 26, 2023) (same); *Gujral v. BMW of N. Am., LLC*, Civ. No. 19-20581, 2022 WL 3646627, at *6 (D.N.J. Aug. 23, 2022) (finding that the plaintiffs stated a claim for unjust enrichment where they "sufficiently allege[d] that [the d]efendant benefited financially

18

from its alleged breach of warranty, misrepresentations, and fraud"). But here, Plaintiffs' allegations fall short of any wrongdoing or failure to perform by FCA.

Therefore, Plaintiffs have not stated a claim for money had and received or unjust enrichment. *See Tripicchio v. UPS Store, Inc.*, Civ. No. 21-14512, 2023 WL 3182915, at *9 (D.N.J. Apr. 30, 2023) ("Plaintiff's payment was part of a transaction in which Defendants provided a service at an agreed upon price—that is, each party received their expected benefit. Plaintiff fails to cite any authority supporting the notion that a transaction for services at a fixed price gives rise to a cause of action for unjust enrichment where those services were sufficiently rendered."). Counts One and Three for money had and received and unjust enrichment are dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 69) is **GRANTED**. The SAC is **DISMISSED** with prejudice.[8] An appropriate Order follows.

Dated: October 23, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[8] As in *Beeney*, 2024 WL 3444488, at *2, and for the reasons expressed herein, the Court finds that any further amendment would be futile and thus dismisses the SAC with prejudice. *See Grooms v. Ally Fin.*, No. 23-2285, 2023 WL 8251315, at *2 (3d Cir. Nov. 29, 2023) ("[W]e agree with the District Court's determination that amendment would be futile and therefore the District Court properly dismissed the complaint with prejudice.").